IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY<br><br>　Plaintiff,<br><br>v.<br><br>JJ RED COMMERCIAL ROOFING, LLC; ROBERT M. EDWARDS; and RHONDA S. EDWARDS<br><br>　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　CIVIL ACTION NO. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Philadelphia Indemnity Insurance Company ("PIIC" or the "Surety"), files this Original Complaint against Defendants JJ Red Commercial Roofing, LLC; Robert M. Edwards; and Rhonda S. Edwards (collectively "Defendants"), and respectfully states as follows:

**I.　PARTIES**

1.　Philadelphia Indemnity Insurance Company is a corporation organized under the laws of the State of Pennsylvania with its principal place of business located in Bala Cynwyd Pennsylvania, which is the location from which PIIC's high-level officers direct, control, and coordinate PIIC's corporate activities. PIIC is duly qualified and authorized to transact business within the State of Texas.

2.　Upon information and belief, JJ Red Commercial Roofing, LLC ("JJ Red") is a Texas limited liability company with its principal place of business in Desoto, Texas. Upon information and belief, JJ Red's sole member is Robert Edwards, an individual resident of the State of Texas. As such, for purposes of diversity jurisdiction, JJ Red is a citizen of Texas. JJ Red

may be served with process through its registered agent, Rhonda Edwards at 323 Terrace Lane, Cedar Hill, Texas 75104.

3. Upon information and belief, Robert M. Edwards is a resident and citizen of the State of Texas. Mr. Edwards may be served with process at his residence 323 Terrace Lane, Cedar Hill, Texas 75104 or wherever he may be found.

4. Upon information and belief, Rhonda S. Edwards is a resident and citizen of the State of Texas. Ms. Edwards may be served with process at her residence 323 Terrace Lane, Cedar Hill, Texas 75104 or wherever she may be found.

## II.    JURISDICTION AND VENUE

5. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and the matter in controversy is between citizens of different states.

6. Because the Plaintiff, PIIC, is a citizen of Pennsylvania for diversity purposes, and Defendants are citizens of Texas for diversity purposes, complete diversity exists, and this Court has diversity jurisdiction over this matter.

7. Venue is proper in this district under 28 U.S.C. § 1391 in that (a) the Defendants either reside or maintain a principal place of business in this district in the State of Texas, (b) a substantial part of the events or omissions giving rise to the Surety's claim occurred in this district, and (c) Defendants are subject to personal jurisdiction in this district at the commencement of this action and there is no other district in which the action may be brought.

### III.  FACTUAL ALLEGATIONS

A.  **The Indemnity Agreement**

8. To induce the Surety to issue the Bonds (as hereinafter defined), on or about January 17, 2020, JJ Red, Mr. Edwards, and Ms. Edwards executed a General Indemnity Agreement, the purpose of which was to induce the Surety to furnish bonds on behalf of JJ Red and protect the Surety from any loss or expense it may incur arising from or related to the issuance of any such bonds. A true and correct copy of the January 17, 2020 General Indemnity Agreement (the "Indemnity Agreement"), is attached hereto as *Exhibit "A"* and fully incorporated herein for all purposes. JJ Red, Mr. Edwards, and Ms. Edwards are at times hereinafter, collectively referred to as the "Indemnitors".

9. Under the Indemnity Agreement, Indemnitors promised to exonerate, indemnify, and keep PIIC indemnified from and against all Liability & Loss (as hereinafter defined) that PIIC has incurred or anticipates that it will incur by reason of issuing Bonds (as hereinafter defined) pursuant to the Indemnity Agreement. Specifically, Indemnitors agreed as follows:

> […] to indemnify and hold harmless Surety from and against any Liability & Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of Principals or Indemnitors to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement.

(*Exhibit "A"*, ¶ 3).

10. The Indemnity Agreement specifically defines Liability & Loss as follows:

> **Liability & Loss:** Any and all liability, losses, costs, expenses, and fees of whatever kind or nature that Surety may sustain or incur as a result of executing any Bond, or as a result of the failure of Principals or Indemnitors to perform or comply with this Agreement. Liability & Loss includes but is not limited to: (i) the face amount of any claim or demand that is asserted against Surety under any Bond(s) plus the Surety's estimate of the costs and expenses Surety may sustain and incur while paying, compromising,

> resisting, defending, trying or appealing the claim or demand (in Surety's sole discretion) (ii) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (iii) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; (iv) ail accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principals or Indemnitors; (v) funds loaned or advanced by Surety (at the Surety's sole discretion) to the Principals; and (vi) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principals or Indemnitors.

(*Exhibit "A"*, ¶ 1.i).

11. Further, by execution of the Indemnity Agreement in favor of PIIC, the Indemnitors obligated themselves to fully collateralize PIIC, upon demand, if Liability & Loss were either incurred or anticipated by PIIC in connection with issuing Bonds:

> **POSTING OF COLLATERAL** – Principals and Indemnitors agree to deposit collateral immediately upon demand by Surety an amount equaling any and/or all of the following: (a) the face amount of any claim or demand that is asserted against Surety under any 3ond(s) plus the Surety's estimate of the costs and expenses Surety may sustain and incur while paying, compromising, resisting, defending, trying or appealing the claim or demand (in Surety's sole discretion); (b) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (c) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; (d) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principal or Indemnitors; (e) funds loaned or advanced by Surety (at the Surety's sole discretion) to the Principal; and (f) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principals or Indemnitors. Surety may, in its sole discretion, either retain or use any part or all of the collateral in settlement or payment of any claim made under any Bond(s), as collateral or reimbursement for any actual Liability & Loss already incurred, as reserve to cover the amount of any potential Liability & Loss, or for any other purpose related to any Liability & Loss for which the Indemnitors would be required to collateralize, exonerate, or indemnify Surety under the terms of this

>Agreement. The Principals and Indemnitors shall be obligated to deposit the amount of collateral demanded by Surety regardless of whether they dispute their liability for any Liability & Loss or potential Liability & Loss or assert any defenses to the validity or enforcement of this Agreement. In the event that Surety demands collateral from more than one Principal or Indemnitor, Surety shall be entitled, in its sole discretion, to apportion the amount of collateral required to be deposited by each Principal or Indemnitor. If Surety permits the Principals and Indemnitors to deposit less than the full amount of either (a) through (f) herein, Surety may, from time to time, require the Principals and Indemnitors to increase the amount of the collateral by any amount Surety deems appropriate, in its sole discretion, up to an amount equal to (a) through (f) herein. In the event that the Principals and Indemnitors fail to deposit the amount of cash collateral required under this provision, Surety may, in its sole discretion, direct the Principals and Indemnitors to deposit alternate forms of collateral security acceptable to Surety. Principals and Indemnitors acknowledge that their duty to deposit collateral under this Paragraph is specifically enforceable because Surety lacks an adequate remedy at law and their failure to deposit collateral with Surety as required by this Paragraph will cause irreparable harm to as to justify injunctive relief compelling the deposit of collateral. Surety agrees to refund any unused portion of the deposit, without any interest or other damages for loss of use of such funds, upon the termination of all liability of Surety on all Bonds and the full performance of all of the Principals and Indemnitors of all obligations under this Agreement.

(***Exhibit "A"***, ¶ 4).

12. To the extent that the Surety makes any payments under the Bonds, the Indemnitors further agreed "to accept vouchers, a sworn itemization, or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Principals and Indemnitors to Surety in any demand, claim or suit by Surety against Principals and Indemnitors." (***Exhibit "A"***, ¶ 3).

**B.    PIIC's Incurred Loss**

13. In reliance upon its rights under the Indemnity Agreement, the Surety issued various performance and payment bonds (collectively, the "Bonds") on behalf of JJ Red, as principal, for the construction of the multiple projects within the State of Texas (collectively, the "Projects"). Attached hereto as ***Exhibit "B"*** is a true and correct copy of these Bonds.

14. After issuance of the Bonds, claims were asserted against the Surety under the Bonds by various subcontractors or suppliers of JJ Red on the Projects.

15. By virtue of these Claims, posting of collateral, and other obligations of the Indemnitors were triggered under the Indemnity Agreement.

16. By letter dated August 12, 2021, attached hereto as ***Exhibit "C"***, the Surety demanded that the Indemnitors jointly or severally deposit with PIIC $172,000.00 in cash or other property acceptable to the Surety as collateral security, within seven days of the letter, to protect the Surety from all Liability & Losses it might sustain or incur as a result of executing the Bonds on behalf of JJ Red.

17. By letter dated October 20, 2022, attached hereto as ***Exhibit "D"***, the Surety demanded that the Indemnitors, jointly or severally, indemnify the Surety's Liability & Loss incurred through that date totaling $109,405.54 within seven days of the letter.

18. As of the date of this filing, the Surety has resolved claims on the Bonds totaling $88,512.06 (hereinafter referred to as the "Claims"). Additionally, the Surety has incurred an additional $23,598.98 in expenses in furtherance of its investigations into and defense of the Claims. The Surety was able to recover $18,585.98 of its incurred attorneys' fees as a result of the Surety's successful defense of a lawsuit filed by one of JJ Red's subcontractors against the Bonds. Accordingly, as of the date of this filing, the Surety's incurred Liability & Loss totals $93,525.06 (the "Incurred Loss"). The Surety's vouchers or other evidence of such Incurred Loss is attached hereto as ***Exhibit "E"***.

19. As of the date of this filing, the Indemnitors have refused to do anything to exonerate, indemnify, or hold the Surety harmless.

20. All conditions precedent to recovery by the Surety from the Indemnitors have occurred or have been performed.

### IV.   CAUSES OF ACTION

*Count I*
*Breach of Indemnity Agreement*

21. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in the preceding paragraphs.

22. Indemnitors have failed, delayed, refused, or otherwise been unable to pay bills or other indebtedness incurred in connection with the projects for which the Bonds were issued. The Indemnitors failures have resulted in direct and indirect losses to the Surety.

23. Under Paragraph 4 of the Indemnity Agreement, the Indemnitors are obligated to deposit collateral with the Surety immediately upon demand. The Indemnitors "shall be obligated to deposit the amount of collateral demanded by Surety regardless of whether they dispute their liability for any Liability & Loss or potential Liability & Loss or assert any defenses to the validity or enforcement of this Agreement." (***Exhibit "A"***, ¶ 4).

24. As of the date of this filing, the Surety has incurred Liability & Loss, and continues to incur Liability & Loss, as a result of issuance of the Bonds.

25. Pursuant to Paragraphs 3 and 4 of the Indemnity Agreement, on August 12, 2021, and again on October 20, 2022, the Surety demanded that the Indemnitors deposit collateral relative to the claims or otherwise exonerate, indemnify, and save harmless the Surety from Loss associated with the Claims.

26. Despite the Surety's demand, to date, the Indemnitors have failed and/or refused to exonerate, collateralize, and indemnify the Surety or to otherwise pay the Surety an amount

sufficient to discharge the Liability & Loss or claims against the Surety from having issued the Bonds.

27. The failure of the Indemnitors to deposit the demanded collateral with the Surety constitutes a breach of Paragraph 4 of the Indemnity Agreement. Further, the failure of the Indemnitors to exonerate, indemnify, and save harmless the Surety from the claims constitutes a breach of Paragraph 3 of the Indemnity Agreement. Each of these failures by the Indemnitors constitute a Default under Paragraph 1.h. of the Indemnity Agreement. The wrongful acts of the Indemnitors constitute independent breaches of the Indemnity Agreement. (***Exhibit "A"***, ¶¶ 1, 3, and 4).

28. Under the Indemnity Agreement, the Indemnitors are jointly and severally liable to the Surety for all of the Surety's Liability & Loss, which includes attorneys' fees and expenses incurred in connection with Claims on the Bonds and enforcement of the Indemnity Agreement. (***Exhibit "A"***, ¶ 4).

29. The Surety is therefore entitled to payment by Indemnitors, for all of the Surety's Liability & Loss resulting from issuance of the Bonds.

## Count II
### *Recovery of Attorneys' Fees and Expenses*

30. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in the preceding paragraphs.

31. The Surety is entitled to recover its attorneys' fees, interest, and expenses from Indemnitors, as indemnitors, under the Indemnity Agreement and Texas law. TEX. CIV. PRAC. & REM. CODE § 38.001, *et seq*.

32. The Surety is further entitled to recovery of pre-judgment and post-judgment interest at an annual rate of 10%. (***Exhibit "A"***, ¶ 20).

## V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Philadelphia Indemnity Insurance Company respectfully requests that JJ Red Commercial Roofing, LLC; Robert M. Edwards; and Rhonda S. Edwards be cited to appear and answer herein and, upon final trial thereof, that Philadelphia Indemnity Insurance Company receive:

1. Judgment against Defendants, JJ Red Commercial Roofing, LLC; Robert M. Edwards; and Rhonda S. Edwards, jointly and severally, in the sum of $93,525.06;

2. Pre-judgment and post judgment interest at an annual rate of 10%;

3. Costs of this suit and attorneys' fees incurred in enforcement of the Indemnity Agreement; and

4. Such other and further relief to which the Surety is justly entitled.

Respectfully submitted,

**DRY LAW, PLLC**

By: */s/ Steven K. Cannon*
Steven K. Cannon
State Bar No. 24086997
James D. Ewing
State Bar No. 24110821
909 18th Street
Plano, Texas 75074
(972) 797-9510 Telephone/Facsimile
scannon@drylaw.com
jewing@drylaw.com

**ATTORNEYS FOR PHILADELPHIA INDEMNITY INSURANCE COMPANY**